LEE BURCH AND CHARLEY HOLBROOK v. THE STATE.

Verdict — Sufficiency of Evidence to Sustain.

When the judge who presided at a trial, heard the evidence and saw the witness, and had the same opportunity for reaching a correct conclusion on the facts as the jury had, sanctions the verdict, it will not be disturbed by this court unless there is a very clear case of error, passion or prejudice; it is not sufficient that the judges may think that they would not have found the verdict rendered.[1]

Same — Assignment of Error on the Ground That the Verdict is Not Supported by the Evidence — Nature of.

An assignment of error on the ground that the Circuit Court overruled a motion for a new trial because the verdict is not supported by the evidence is in the nature of a demurrer to the evidence, which is held to admit everything which the jury might reasonably infer from the evidence.[2]

Appellants, Lee Burch and Charlie Holbrook, were convicted in the Circuit Court of Noxubee county of grand larceny and sentenced to the penitentiary, and appeal. The opinion of the court states the facts.

---

1

Where the verdict of a jury is not supported by the evidence in the case it should be set aside by the court. Barnett v. Jayne, 1 Miss. Dec. 65, and cases cited in note 2.

The verdict of a jury will be set aside on consideration of the facts alone if they fail to sustain it. Allen v. State, 1 Miss. Dec. 126, and cases cited in note.

A decree of the lower court will not be reversed in the Supreme Court unless the record affirmatively shows that injustice has been done, the presumption being that the court had sufficient reason for its action. Smith v. Harris, 1 Miss. Dec. 210, and cases cited in note 1. See cases cited in 1 Miss. Dec. 407, note 1.

A verdict will not be allowed to stand where there is palpable failure of the proof to sustain it. In such cases a new trial will be granted. Campbell v. State, 1 Miss. Dec. 413, and cases cited in note.

Manifest error in a verdict is sufficient ground for the reversal of the judgment thereon. Walker v. State, 1 Miss. Dec. 431, and cases cited in notes.

If the verdict of a jury is contrary to the evidence and the instructions of the court, it should be set aside and a new trial granted by the court. Turley v. Ingram, 1 Miss. Dec. 542, and cases cited in notes.

The judgment of a Circuit Court will be reversed on the ground that the

APPEALED from Circuit Court, Noxubee county, JAS. M. ARNOLD, Judge.

Affirmed, November 21, 1881.

*Attorneys for appellants, L. Brame, and J. E. Madison.*

*Attorney for the State, T. C. Catchings, Attorney-General.*

Brief of L. Brame:

It was incumbent on the State to show a felonious taking. Larceny means theft—to steal, to take by stealth. If the taking is open, in the presence of the owner or other persons, it is evidence of a mere trespass. 2 Wharton's Am. Cr. L. § 1786; McDaniel *v.* The State, 8 S. & M. 401; State *v.* Ledford, 67 N. C. 60; Isaacs *v.* The State, 30 Texas, 450; Humphry *v.* The State, 63 Ind. 223.

verdict is wrong when no error of law is complained of if the evidence is insufficient to support the verdict of the jury. Porter *v.* State, 1 Miss. Dec. 555, and cases cited in note.

2

·The rule is to regard favorably the action of the trial court upon a motion for a new trial involving the sufficiency of the evidence to uphold a verdict. Railway Co. *v.* Crayton, 69 Miss. 152; 12 So. 271.

There are cases in which the granting or refusing a new trial is a matter of discretion. In such cases, if the new trial is refused, a strong case must be shown before the court will hold it error; if it is granted, it must be manifest that this was improper, inasmuch as it is not a final decision of the case. Dulaney *v.* Rankin, 47 Miss. 391.

This court will not substitute its judgment for that of the jury as to the *quantum* of damages, but where the record shows that the jury proceeded upon the wrong premises and the court below contributed to the error, and that the verdict was the result of haste, inconsiderateness, or intemperance, a new trial will be granted. Myers *v.* Farrell, 47 Miss. 281.

The rule that the action of a trial court upon a motion for a new trial will be viewed favorably and sustained by this court, unless manifest error appears therein, is peculiarly applicable where the new trial has been granted, since, in such cases, the rights of the parties are not finally settled as when a new trial is refused. Smith *v.* Walsh, 63 Miss. 584.

This court, in passing upon the correctness of a conviction, does not weigh conflicting testimony, and it will not look further than to see whether the verdict is supported by competent and sufficient evidence. In this connection the approval of the verdict of the trial judge who heard the evidence is a fact to be considered. Logan *v.* State, 53 Miss. 431.

The felonious intent is as necessary to be proved as the taking and carrying away. The mere fact of the taking does not raise a presumption of guilt. The felonious intent must be shown by circumstances connected with the taking. The law presumes in favor of innocence, and the burden of proving the criminal intent is on the State. Mason *v.* The State, 32 Ark. 238; Herber *v.* The State, 7 Texas, 69.

The felonious intent must be shown to exist at the very time of the taking. No subsequent wrongful conduct or intention will render the previous taking felonious. Dignowitty *v.* The State, 17 Texas, 531; Humphrey *v.* The State, 63 Ind. 223.

The instructions rested the case solely on the question as to whether the property was taken under a *bona fide* claim of ownership. Strangely enough, the jury were not informed that if the taking was open and in the presence of others, it was evidence of a trespass only.

Cotton, who forfeited his bond and fled, may have been guilty of larceny; but the proof is altogether insufficient to sustain the conviction of appellants. There is no evidence whatever that they had been acting in concert with Cotton before the hog was killed; nor does a single circumstance indicate that they knew when the hog was shot down under instructions from Cotton that he was asserting a false claim of ownership. In the absence of proof to show this the law must presume in favor of the innocence of the parties in committing the act. The parties, with others, were then near where Cotton lived, and it was not at all unreasonable that they should suppose that he had hogs in the swamp.

The conduct of Cotton was somewhat suspicious; but, if the court will observe, it will be seen that the explanation made by Burch and Holbrook corresponds exactly with the facts as detailed by the witnesses in regard to the killing of the hog. The fact that Burch paid the owner was not an admission that he had stolen the hog. It was perfectly proper that he should pay the owner after ascertaining that the hog did not belong to Cotton. He made no statements indicative of guilt, and did not even request that the matter should be kept quiet or secret.

Appellants were charged with larceny, not with receiving stolen goods, properly knowing it to be such; and in the absence of proof showing a felonious taking they ought to have been acquitted.

Brief of J. E. Madison:

While it is true that the rule is that a new trial will not be granted on the evidence alone, unless the verdict is opposed by a decided preponderance of evidence, or based on no evidence, still this court does not hesitate to grant new trials when the verdict is not sufficiently supported. This court granted a new trial on circumstantial evidence, in Browning's Case, 33 Miss. 48; Algheri's Case, 25 Miss. 584; Caleb's Case, 39 Miss. 721, where there were two concurring verdicts of guilty, and the Supreme Court granted a second new trial, and, Pitts' Case, 43 Miss. 472.

All of the cases cited were upon circumstantial evidence, and excepting Caleb's case probably, were stronger against the respective defendants than the testimony in this case is against the defendants at bar.

The fact that the cases cited are murder cases cannot alter the rule, as the principle of reasonable doubt in a grand larceny case is the same as it is in murder.

Then where is the testimony to show that Burch and Holbrook acted otherwise than under an honest belief that the hog was Cotton's when they killed it; in other words, where is the testimony to show the "felonious intent?" I must admit that I can see none, and the verdict in this case is not only opposed by a decided preponderance of evidence, but is based upon no evidence, and should be set aside.

If the verdict herein is affirmed, these boys will be sent to the penitentiary on testimony "sparser" than any it has ever been my fortune to find in the law books of this country.

Brief of T. C. Catchings, Attorney-General:

Because the taking was open, in the presence of witnesses, it does not follow that the act was a mere trespass.

Every larceny involves trespass, whether the taking be by stealth or openly. While ordinarily it is true that we would not infer a felonious intent where the taking is open, yet the law does not prohibit us from so doing. The thief usually commits his crime by stealth; therefore, as a mere matter of evidence, an open taking does not ordinarily create the belief that it was felonious. Notwithstanding this, however, it is for the jury to say upon the whole testimony whether the taking was felonious, although it may have been open and in the presence of witnesses.

It is also true that where the original taking was a mere tres-pass, a subsequent felonious intent makes the offense larceny. Wharton, § 1865 (f).

In view of the foregoing principles the verdict must stand. The case was submitted upon most liberal instructions as to the accused, since the jury were directed to acquit if they entertained a doubt as to whether the accused killed the hog under an honest belief that it was the property of Cotton; whereas, even if that were true, their subsequent conversion of the meat, after being in-formed whose it was, was evidence from which larceny might be inferred, and this, the jury under the instructions, were practically excluded from considering.

There being no error in the instructions the verdict cannot be disturbed.

OPINION.—CAMPBELL, J.:

The single question in this case is, whether the verdict is sup-ported by the evidence. No error is complained of except the re-fusal of the Circuit Court to grant a new trial on the motion of appellants, which was based on the assumption that the verdict is contrary to the law and the evidence. The rule of this court in such a case has been often announced and must be well un-derstood. The verdict must be manifestly wrong; it must be against the overwhelming preponderance of the evidence; it must be clearly against the evidence; it must present a clear case of error, passion or prejudice to induce this court to interfere where the jury has not been misled by erroneous instructions, are some of the forms of expression used by this court in speaking of new trials upon the evidence. It is not sufficient to induce this court to set aside a verdict that the judges may think that they would not have found the verdict rendered. When the judge who pre-sided on the trial and heard the evidence, and saw the witnesses and enjoyed the same opportunity for reaching a correct conclusion on the facts as the jury had, sanctions the verdict as one he is un-willing to disturb, it should be a very clear case of error to induce this court, looking at the evidence as presented by the bill of ex-ceptions, to grant a new trial because it may doubt the correctness of the verdict. The only rule safe in practice and consistent with our system of jury trial, and granting new trials, and appeal from judgments overruling motions for new trial, is that on which this court has always acted, as announced in numerous cases.

An assignment of error on the ground that the Circuit Court overruled a motion for a new trial because the verdict is not supported by the evidence is in the nature of a demurrer to the evidence, which is held to admit everything which a jury might reasonably infer from the evidence; and the question here is, whether assuming as *proved* everything which the jury may reasonably have inferred from the evidence, the verdict is hereby supported. If so, it must stand. If not, it must be set aside.

Lee Burch and Sawney Cotton resided one-half of a mile from each other and had a friend named Charley Holbrook, whose place of residence is not disclosed by this record. Talbot owned a large blue barrow, which was marked, and was gentle, and stayed near Burch's house. Burch, Cotton and Holbrook were in the swamp on a certain day, hunting hogs, and their dogs bayed a large blue barrow, which the evidence leaves little, if any, room to doubt was Talbot's. Burch and Holbrook, coming up with the dogs and hog, inquired whose it was, saying they did not know, and, Cotton arriving, said, "It is my hog, shoot it down," and Burch shot it. It was then taken to his house. Talbot was informed of the killing of the hog by one of another party of hog hunters in that swamp, who had been present and witnessed the killing. He proceeded to Burch's house, nearing which he saw Sawney Cotton take to Burch's smokehouse a hog's head, and arriving he saw a hog but just denuded of its hair under the manipulation of Burch and Holbrook. He examined the hair freshly stripped from the hog and found it to be blue, just the color of his blue barrow. He then told the parties they had his hog. Burch and Holbrook said they did not know whose hog it was, and related to Talbot the circumstances of the killing as stated above. Cotton said to Talbot, "By G—d, you are not the only man in the country who owns hogs!" Talbot, seeing the headless carcass of the hog, and believing it to be all that was left of his blue barrow, called for the head, which, after some parleying, was produced, but without the ears, which had once adorned it, while they served to identify their possessor as the property of Talbot, whose mark they bore. The entire absence of the pendant attachments to the severed head of his slaughtered blue barrow served to arouse some suspicion in Talbot's mind that there was some sinister purpose in the needless amputation, and he desired to be informed why such a sacrifice had been made,

and was assured that the dogs had so torn the ears that they were rendered useless and therefore were not preserved. It was not claimed that they were so mutilated as to be useless for the discovery of the mark they bore, but the statement was that they were useless, as meat it is presumed, but they were not produced. Where the mutilated remains of the lacerated ears of that blue barrow were at the moment when Talbot was anxiously seeking to identify it as his we are left in painful mystery by the evidence.

We must inquire what conclusion the jury may have drawn from the evidence. There are several inferences justified by it. Talbot's blue barrow was not a wild hog, but was gentle, and it was marked as his. It roamed near Burch's house. It was not a newcomer or a stranger in those parts, but a resident of the swamp not far from where Burch and Cotton resided. From its size it is fair to conclude that it had spent many months there, and from its being gentle it may be assumed that it had received attention from its owner, and from these circumstances arises a probability that Burch as an ordinary observant person of what was going on about him had knowledge of Talbot's blue hog. It is also probable that he knew his neighbor Cotton's hogs, if he had any. Burch made no claim to the hog as his, and if this blue barrow had been Cotton's it is most likely he would have known it. It does not appear that Burch, Holbrook or Cotton had any hog in the swamp in which they were hunting hogs. Neither Burch nor Holbrook pretended that he had, and, if they were hunting a blue barrow of Cotton's it is extraordinary that they had no previous description of the hog they were hunting. The baying of the blue barrow seems to have been a surprise to them. It was unexpected, manifestly, because the declaration made by Burch and Holbrook of ignorance of the hog, and their inquiry whose it was, unmistakably (supposing these manifestations to have been sincere) betray the absence of any hunt for *that* hog. If they had started for Cotton's blue barrow, they would have been at no loss what to do when they came up with one answering its description. It is not shown that any of the party had any hogs in the swamp to be hunted. Either they were hunting hogs generally, or they were after Talbot's blue barrow particularly, and their success strongly points to the latter as the object of their hunt. As soon as they got that they retired from the

swamp (which must have been a good place for hogs to be hunted, from the fact that another party was at the same time with these parties engaged in hunting hogs there), content with their spoils for that day. And repairing, not to the house of Cotton, the professed owner of the hog taken in the hunt, but to the house of Burch, they betook themselves to the task of cleaning and dividing between the three all of the hog except its ears.

It was the peculiar province of the jury to determine as to the good faith of the prisoners in their declared ignorance of the ownership of the hog, and their prompt recognition of the claim made to it by Cotton when he ordered it to be shot. The jury must have believed that their conduct was *simulated,* and that they knew the falsity of Cotton's pretended ownership. It is probable that the missing ears of the hog furnished undisputable evidence of a desire for the concealment of the marks of identification which they furnished, entirely inconsistent with honesty of purpose in the conduct of the prisoners, and that the light reflected by this circumstance back upon the killing of the hog was considered sufficient to characterize the taking as felonious. Considering all of the circumstances connected with the life and history and death of Talbot's blue barrow, and the conduct of the prisoners in dealing with it, we cannot say that the jury was not fully warranted in finding the verdict of guilty. The learned and conscientious judge who presided in the trial refused to disturb the verdict, and this court should not interfere. We have made this extended examination of the facts in order to satisfy counsel that the cause of their clients has not failed to receive our careful attention and consideration.

Counsel for appellants have manifested their sincere belief that their clients were unjustly convicted, but an earnest effort on our part to discover any wrong done them, with a view to correct it if found, has brought us to the conclusion that the jury had a just conception of the conduct of the appellants in their dealings with Talbot's hog. It is probable that the jurors knew that the destruction by dogs of both ears of a hog, so as to render them useless and make their complete excision proper, was unprecedented in their observation of the ways of dogs with hogs, and inconsistent with their knowledge of the structure and tenacity of hogs' ears, and in this we agree with the jury.

*Judgment affirmed.*